```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

```
UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                  Cv. No. 03-2680-B/V
                                     Cr. No. 02-20089-G
TERRY LEE CORPIER,

    Defendant.
```

ORDER CORRECTING THE DOCKET
ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Defendant Terry Lee Corpier, Bureau of Prisons ("BOP") inmate registration number 18225-076, who was, at the time he commenced this action, an inmate at the Federal Correctional Institution in Forrest City, Arkansas, filed a pro se motion pursuant to 28 U.S.C. § 2255 on September 8, 2003.[1] Because the motion, as filed, did not contain a signature page, the Court issued on order on December 17, 2003 directing the prisoner to submit a copy of his motion bearing his original signature under penalty of perjury. The Clerk filed another copy of Corpier's motion, including the signature page, on January 20, 2004. The

---

[1] Corpier was released on October 20, 2004 but did not notify the Clerk of his new address. In order to facilitate the delivery of the Defendant's mail, the Clerk shall correct the docket to reflect his current address, which was obtained from the probation officer: 1515 Nelson Drive, Brighton, Tennessee 38011.

Clerk issued an order on August 3, 2004 directing the Government to respond to one claim in the Defendant's motion, but the order was not served on the Government because of an error by the Clerk. The Court entered another order on September 1, 2004 directing the Clerk to serve the previous order on the Government and extending the time for response. The Government filed its response on September 22, 2004.

On March 28, 2002, a federal grand jury returned a three-count indictment against Corpier. The first count charged that the Defendant possessed a computer containing visual depictions, the production of which involved the use of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). The second and third counts charged that the Defendant knowingly received visual depictions by means of a computer, the production of which involved the use of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2).

On June 3, 2002, pursuant to a written plea agreement, Corpier appeared before then-District Judge Julia Smith Gibbons to enter a guilty plea to all counts of the indictment. On June 7, 2002, Judge Gibbons issued an order accepting Corpier's guilty plea and conducted a sentencing hearing on September 6, 2002, at which time the Defendant was sentenced to twenty-seven (27) months imprisonment, to be followed by a three-year period of supervised

release.[2] Judgment was entered on September 16, 2002. Corpier did not take a direct appeal.

Corpier's § 2255 motion raises the following issues:

1. Whether his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure;

2. Whether his guilty plea was not knowing, voluntary, and intelligently made; and

3. Whether he received ineffective assistance of counsel, in violation of the Sixth Amendment.

The Court will address each of these issues in turn.

Defendant first contends that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure. In particular, Corpier asserts that

> FBI agents, conducting "an investigation" of Movant's Internet activities, used subtle coercion and implied authority to induce Movant, due to his young age and inexperience with the law, to involuntarily submit to their authority and consent to a search of Movant's compute(s), and, subsequently, admitted that they had not obtained a search warrant due to a lack of probable cause.

---

[2] The three counts of conviction were grouped for sentencing purposes pursuant to § 3D1.2(d) of the United States Sentencing Guidelines ("U.S.S.G."), and the guideline resulting in the highest offense level was used, U.S.S.G. § 3D1.3(b). Pursuant to U.S.S.G. § 2G2.2, the base offense level for receiving material involving the sexual exploitation of a minor is 17. Corpier received a two-level enhancement, pursuant to U.S.S.G. § 2G2.2(b)(1), because the material involved a prepubescent minor or a minor under the age of twelve years old, and another two-point enhancement, pursuant to U.S.S.G. § 2G2.2(b)(5), because a computer was used for the transmission of the material, resulting in an adjusted offense level of 21. Corpier received a three-point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of 18. Given his criminal history category of I, the guidelines provided a sentencing range of 27-33 months.

Corpier has waived any suppression issue by his unconditional guilty plea. United States v. Herrera, 265 F.3d 349, 351-52 (6th Cir. 2001); United States v. Pickett, 941 F.2d 411, 415-17 (6th Cir. 1991); see Tollett v. Henderson, 411 U.S. 258 (1973); McCann v. Richardson, 397 U.S. 759 (1970). The written plea agreement in this case does not reserve the right to appeal any issue with respect to guilt, as required by Fed. R. Crim. P. 11(a)(2). Indeed, at the time Corpier entered his guilty plea, he had not filed a suppression motion.

Moreover, even if Defendant had filed a suppression motion and had reserved the right to appeal the denial of that motion, the suppression issue cannot properly be raised in a § 2255 motion. A § 2255 motion is not a substitute for a direct appeal. Sunal v. Lange, 332 U.S. 174, 178 (1947). Thus, as the Supreme Court explained: "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477 n.10 (1976). Moreover, even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); Peveler v. United States, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of

direct appeal); Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." Bousley v. United States, 523 U.S. 614, 622 (1998).

In this case, Corpier did not file a suppression motion or take a direct appeal, and he cannot show cause for his procedural default. Although "[a]ttorney error may constitute cause [sufficient to excuse a procedural default] if it rises to the level of constitutionally ineffective assistance of counsel," Barrow v. United States, 8 Fed. Appx. 286, 288 (6th Cir. Mar. 13, 2001), Corpier has raised no claim that his appellate counsel was ineffective. Although he does contend that his former trial counsel rendered ineffective assistance, Defendant admits that he told his attorney that he consented to the search, and he provides no reason to second guess his attorney's professional judgment that there were no legal grounds for filing a suppression motion where the client consented to the search. Moreover, Corpier's guilty plea, which was accompanied by admissions that he was in fact guilty of the offenses listed in the indictment, precludes any claim of actual innocence.[3]

---

[3] See United States v. Parson, No. 00-4087, 2001 WL 1450696, at *2 (6th Cir. Nov. 2, 2001) ("Lastly, Parson asserts that he is actually innocent of the drug trafficking conviction. However, at his guilty plea hearing, Parson admitted that he engaged in repeated instances of drug trafficking, and he acknowledged his guilt of this crime. Parson's solemn declaration of guilt carries a
(continued...)

5

Nothing in the record provides any basis for a suppression motion. The presentence report indicates that, when the investigating agents first contacted him, Corpier made incriminating statements and consented to the search of his office and home computers. Defendant was twenty-six (26) years old at the time of the search, and nothing in the motion indicates he was precluded from seeking legal advice before giving his consent to search. In light of his consent, it is unnecessary to consider whether there was, in fact, probable cause for the issuance of a search warrant.

The first issue is without merit and is DISMISSED.

In his second claim for relief, Corpier contends that his guilty plea was not knowing, voluntary, and intelligent. In particular, he states as follows:

> Defense counsel never explained elements of offense that prosecutor would have to prove, nor that voluntariness of consent to search was required for consensual search to be valid. At time of change-of-plea, Counsel simply informed Movant that he was going to change his plea to guilty with no explanation whatsoever. Movant trusted and (blindly?) followed Counsel's direction expecting him to protect his rights and interests. Additionally, Movant's plea of guilt was based, in part, on Counsel's assurance that he would serve his time at a Federal Prison Camp (the agreement not to object to Movant's seeking same made a part of Movant's plea agreement). Further, Movant's plea of guilt was predicated on the reasonable expectation that 1) he would serve the last six months of his sentence at a

---

³ (...continued)
presumption of truthfulness . . . and his plea serves as an admission that he committed all of the elements of the crime.").

>  "half-way house" based on the BOP's 15-year adherence to
> a policy of so doing, but which was subsequently changed
> after his incarceration, and 2) that he would receive,
> condition[ed] upon good behavior, "good time" in the
> amount of 54 days per year of his term of imprisonment,
> as per statute, when, instead, Movant is, effectively,
> receiving only 47 days of good time per year of his
> imprisonment. Had Movant been properly informed of these
> facts, he would not have plead [sic] guilty.

Generally, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley, 523 U.S. at 621. Because Corpier did not take a direct appeal, he has procedurally defaulted this claim. Id.; see also El-Nobani v. United States, 287 F.3d at 420.

No exception to the procedural default rule is applicable here. Corpier is not actually innocent of the offenses to which he entered a guilty plea. Although the Defendant has not explained why he did not seek to withdraw his guilty plea before entry of judgment, he asserts that the issue was not raised on direct appeal because his attorney rendered ineffective assistance. To evaluate this rationale, it is necessary to examine whether the guilty plea was, in fact, voluntary and intelligent.

The parties entered into a detailed written plea agreement that provided as follows:

> I, TERRY LEE CORPIER, have been charged with three
> (3) felony counts in indictment No. 02-20089-G.
>
> I have been charged with violations of Title 18,
> United States Code, Section 2422(a)(2). The maximum
> penalty for this charge is a fine of $250,000 and/or

7

fifteen (15) years imprisonment, and a period of supervised release. I have been charged with a violation of Title 18, United States Code, Section 2422(a)(4)(B). The maximum penalty for this charge is a fine of $250,000 and/or five (5) years imprisonment, and a period of supervised release. Fees may be imposed to pay for incarceration or supervised release. There is a $100 special assessment.

I understand that the United States Attorney for the Western District of Tennessee and my defense counsel have entered into a plea negotiation of which I am fully aware and understand. I will enter a plea of guilty to each count of the above indictment.

My attorney, Bradley J. Cordts, whom I have privately retained, has informed me of the nature of these criminal charges and the elements of each charge, each of which must be proved by the Government beyond a reasonable doubt before I could be found guilty as charged.

By voluntarily pleading guilty, I knowingly waive and give up my constitutional right to plead not guilty, to compel the Government to prove my guilt beyond a reasonable doubt, not to be compelled to incriminate myself, to confront and cross-examine the witnesses against me, to have a jury or judge determine my guilt on the evidence presented, and other constitutional rights which apply to a defendant on trial in a criminal case.

I am pleading guilty to the charges described above because I am guilty and because it is in my best interest to do so, and not because of any threats or promises. There has been no representation made whatsoever by any agent or employee of the United States to me as to what the final disposition of this matter should or will be. I understand that the matter of sentencing is within the sole discretion of the Court. I understand that the Federal Sentencing Guidelines apply to these charges and may require a mandatory period of incarceration. I have discussed sentencing with my attorney and realize there is a probability of incarceration.

**I understand the plea agreement in this case to be as follows:**

(1)  I will plead guilty to each felony count of the above-referenced indictment.

(2) The United States acknowledges that I, TERRY LEE CORPIER, timely notified the United States of my intention to enter a plea of guilty, thereby permitting the Court to allocate its resources efficiently within the meaning of the Sentencing Guideline Section 3E1.1(b)(2).

(3)  Provided that I, TERRY LEE CORPIER, commit no new criminal offenses and that I continue to demonstrate an affirmative acceptance of responsibility for my acts, including acknowledging my guilt in open court to the facts as set out in the Indictment, the United States agrees to recommend to the Court that I receive the maximum points allowable for "Acceptance of Responsibility" under Section 3E1.1 of the <u>Federal Sentencing Guidelines</u>.

(4)  I understand that the United States agrees that under Section 2G2.4(b)(2) of the <u>Federal Sentencing Guidelines</u>, these offenses did not involve possession of more than ten (10) items and the United States will not seek an enhancement under this Guidelines Section, it being inapplicable upon the facts.

(5)  I understand that if a term of imprisonment is recommended, the United States will not object to a request that such imprisonment be in a minimum security facility such as Millington Federal Prison Camp.

I understand that persons convicted of crimes are required to pay a mandatory assessment of $100 per felony count of conviction. I agree that payment of this assessment, in full, is a condition of this agreement and that failure to do so will make this entire agreement null and void, at the unilateral election of the United States.

I understand that this agreement does not apply to any crimes that I may have committed (other than those specifically set forth herein), or that I may commit hereafter, including perjury.

I understand that the Court is not bound by the recommendation or stipulation of the Assistant United

9

States Attorney and may sentence up to the maximum provided by law.

I understand that the prosecution will be free to describe the nature of this (these) offense(s) and the evidence in this case.

I understand that a thorough presentence investigation will be conducted and sentencing recommendations independent of the United States Attorney's office will be made by the preparer of the presentence report, which the Court may adopt or take into consideration.

I willingly stipulate that there is a sufficient factual basis to support each and every material factual allegation contained within the count of the Indictment to which I am pleading guilty.

I have not been coerced, threatened, or promised anything other than the terms of this plea agreement, described above, in exchange for my plea of guilty. I understand that I will have an opportunity to personally address the Court prior to sentence being imposed.

I can read and write, and I have read and discussed the terms of the foregoing plea agreement with my attorney and am satisfied with my attorney and his advice and counsel. Being aware of all of the possible consequences of my plea, I have independently decided to enter this plea of my own free will, and am affirming that agreement on the date and by my signature below.

At the change of plea hearing on June 3, 2002, Corpier testified that he understood the proceedings, that he had had ample opportunity to discuss the case with his attorney, and that he was satisfied with the representation afforded him. 06/03/02 Tr. at 4. He also testified that he had read the indictment and discussed it with his attorney, id. at 5-6, and that he understood the nature of the charges, id. at 6-8, and the range of available penalties, id. at 8-9. Corpier stated under oath that no one had threatened him or

tried to force him to plead guilty and that he signed the plea agreement freely and voluntarily. Id. He also stated that his attorney had discussed with him the application of the sentencing guidelines to his case, and he understood that the Court would determine the guideline range. Id. at 11. In addition, Corpier testified as follows:

> THE COURT: Do you understand that it's up to the court to decide whether or not to follow the recommendations contained in the plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that if the court does not follow those recommendations, you will not have an opportunity to withdraw your plea?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Has anybody made a promise or prediction to you about what your sentence will be if you plead guilty?
>
> THE DEFENDANT: No, ma'am.

Id. at 12-13.

Likewise, after the prosecutor outlined what the proof would be in the event of a trial, the following exchange occurred:

> THE COURT: Is that correct as to your involvement in this matter, Mr. Corpier?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 14.

The Court's August 3, 2004 order directed the Government to file a response to "the claim that the guilty plea was not knowing and voluntary because defense counsel represented that [the

11

Defendant] would serve the last six months of his sentence at a halfway house, and that he would be eligible to receive fifty-four (54) days per year in 'good time' credits." As the Government has noted, Response of the United States to Defendant's Petition Under 18 [sic] U.S.C. § 2255, filed 09/22/04 ("G. Br."), at 2 n.1, the motion does not state that counsel made any such representations. Paragraph 5 of the Plea Agreement provided that, "if a term of imprisonment is recommended, the United States will not object to a request that such imprisonment be in a minimum security facility such as Millington Federal Prison Camp." At the sentencing hearing, defense counsel requested that the Court make that recommendation to the BOP, 09/06/02 Tr. at 7-8, and the sentencing judge agreed to do so but told the Defendant that "you understand the Bureau of Prisons does not have to follow my recommendation," id. at 8. The judgment contains the sentencing judge's recommendation that Corpier serve his sentence at "Millington or a Minimum Security Camp." Nothing in the record reflects any promise that Corpier would serve the last six months of his sentence at a halfway house. Instead, he denied that any representations were made to him about his sentence.

Corpier's representation that he would not have entered a guilty plea had he known that he could not serve six months in a halfway house and that he would be eligible for only forty-seven (47) days of good time credit per year, rather than the fifty-four

12

(54) days he believed he would receive, makes little sense. First, the motion does not explicitly state that either the Government or defense counsel made any such promise. The BOP has the authority to determine where a prisoner serves his sentence, 18 U.S.C. § 3621(b), and even where, as here, the sentencing judge makes a specific recommendation, the BOP is not required to follow it.[4]

Second, Corpier had little to gain and much to lose by going to trial. In light of his incriminating statements and his voluntary consent to the search, the likelihood of conviction would have been great. Defendant realized tangible benefits from the guilty plea, including the three-point reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and the agreement by the Government to forego an enhancement pursuant to U.S.S.G. § 2G2.4(b)(2), which could have added another two levels to his total offense level. By proceeding to trial, Corpier's total offense level would likely have been 24, resulting in a sentencing range from fifty-one (51) to sixty-three (63) months. It makes little sense that he would take that risk, notwithstanding how much he would have preferred to avoid extended placement in a traditional

---

[4]  See United States v. Serafini, 233 F.3d 758, 779 n.23 (3d Cir. 2000) ("[A] district court has no power to dictate or impose any place of confinement for the imprisonment portion of the sentence. Rather, the power to determine the location of imprisonment rests with the Bureau of Prisons.") (emphasis in original); United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991) (sentencing recommendation designating place of confinement is "mere surplusage"); Brown-Bey v. United States, 720 F.2d 467, 470 (7th Cir. 1983) (interpreting § 3621(b)'s language "[t]he Bureau may designate any available . . . facility" for a prisoner's confinement as not creating any statutory right to assignment to a particular prison or to transfer between prisons); Lyons v. Clark, 694 F. Supp. 184, 187 (E.D. Va. 1988)(same).

prison. It makes even less sense that Corpier would risk a potential doubling of his sentence because of the potential annual loss of seven (7) days in anticipated good time credit.

The second issue is without merit and is DISMISSED.

Finally, Corpier contends that his attorney rendered ineffective assistance, in violation of the Sixth Amendment. In particular, Corpier states as follows:

> Defense counsel never explained the elements of movant's offense which prosecutor would have to prove, beyond a reasonable doubt, nor that voluntariness of consent to search was required for consensual search to be valid, when, in fact, consent was not voluntary. Counsel never questioned or investigated any of the facts of Movant's case, nor subjected the prosecution's case to any degree of adversarial testing, but only asked Movant if he had consented to the search and accepted Movant's answer of "I guess so" as indicative of a knowing and intelligent consent without any further questioning or investigation. During one conversation, Counsel stated, "I just want to ask you? . . . Most all of my clients give consent for a search. . . I'm just wondering why they do that?" Yet, he found no significance in Movant's answer of, "It was like a Used Car Salesman's approach; you're talked into buying the extra warranty before you know what's going on." From the second meeting with Counsel on, no meeting every lasted over 15-20 minutes[. I]t appears, in retrospect, that Counsel's only goal was to seek a "deal", or some diversionary adjudication, from the government, but never to test the government's case. Movant had no experience with the law whatsoever and, so, depended upon Counsel's education, experience, and knowledge of the law for his protection and defense, expecting that Counsel would ask the right questions at the right time to elicit the information necessary to defend him. Had Counsel done any investigation of Movant's case at all, the evidence of the invalid search and seizure would have been suppressed and Movant would have no conviction at all.

This issue appears to be an amalgamation of the two previous issues, both of which were rejected on the merits. The written plea agreement and the change of plea transcript make clear that Corpier was informed of the elements of the offenses. Moreover, the presentence report indicates that Corpier told the investigators that "he wanted to cooperate in any way with the investigation." Presentence Report, ¶ 13. Corpier apparently made the decisions to cooperate, and to consent to the search of his office and home computers, prior to retaining his trial counsel. Under those circumstances, there was no basis for a suppression motion, and counsel was not ineffective for recommending that Corpier plead guilty.

The third issue is without merit and is DISMISSED.

Consideration must also be given to issues that may occur if the Defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

16

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[5]

In this case, the Defendant's claims are clearly lacking in substantive merit for the reasons previously discussed and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952.[6] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P.

---

[5] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

[6] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.

24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal <u>in forma pauperis</u>, the prisoner must file his motion to proceed <u>in forma pauperis</u> in the appellate court. <u>See</u> Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal <u>in forma pauperis</u> is DENIED. Accordingly, if movant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in forma pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 29th day of September, 2006.

                                        <u>s/ J. DANIEL BREEN</u>
                                        UNITED STATES DISTRICT JUDGE